UNPUBLISHED OPINION

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| THE ESTATE OF MEGAN MOORE, *et al.*, | |
| Plaintiffs, | Civil No. 17-2839 (RBK/KMW) |
| v. | **OPINION** |
| CUMBERLAND COUNTY, *et al.*, | |
| Defendants. | |

**KUGLER**, United States District Judge:

This matter comes before the Court on Defendant Robert Balicki's motion to dismiss (Doc. No. 21). Because Plaintiffs' complaint abounds with conclusory allegations and fails to state a plausible claim for relief, Balicki's motion to dismiss is **GRANTED** and all claims against Balicki are dismissed without prejudice.

## I. THE FACTS

Megan Moore committed suicide in her jail cell on February 20, 2017. (Compl. ¶ 19.) She had been incarcerated for some period of time at the Cumberland County Jail before her death. Her estate's complaint alleges that various unidentified corrections officers "failed to properly screen Megan Moore for any suicidal tendencies or any other psychological and/or emotional problems" and failed to properly monitor her during her incarceration. (*Id.* ¶¶ 16-20.) Supervising these unnamed individuals was Robert Balicki, who was warden of the Cumberland County Jail until his retirement or resignation on February 1, 2017, three weeks prior to Moore's suicide. (*Id.* ¶ 14.)

1

Plaintiffs have brought six separate claims against Balicki, which, although overlapping, are as follows:

- A deprivation of Moore's constitutional rights under 42 U.S.C. § 1983, under theories of a failure to train or supervise the corrections officers below him, a failure to maintain a safe and suitable environment, and a deliberate indifference to the constitutional rights of inmates to be adequately screened for suicidal tendencies (Count One);

- A deprivation of Moore's constitutional rights that establishes supervisory liability under 42 U.S.C. § 1983 (Count Three);

- Violation of the New Jersey Civil Rights Act (the "NJCRA"), N.J. Stat. Ann. 10:6-1, *et seq.* (Count Four);

- A number of tort claims, including wrongful death (Count Five), a survival action resting on theories of negligence, recklessness, or gross negligence (Count Six), and negligence (Count Seven).

Balicki is sued in his individual capacity. This is the extent of the facts provided by the complaint.

## II. THE 12(b)(6) STANDARD

When considering a motion to dismiss a complaint for failure to state a claim, Fed. R. Civ. P. 12(b)(6), the Court must accept all well-pleaded allegations in the complaint as true and view them in the light most favorable to the non-moving party. A motion to dismiss may be granted only if the plaintiff has failed to set forth fair notice of what the claim is and the grounds upon which it rests that make such a claim plausible on its face. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). Although Rule 8 does not require "detailed factual allegations," it requires "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555).

In reviewing the sufficiency of a complaint, the Court must "tak[e] note of the elements [the] plaintiff must plead to state a claim. Second, it should identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth. Finally, [w]hen there are

well-pleaded factual allegations, [the] court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (alterations in original) (internal citations and quotation marks omitted).

We note that district courts may dismiss claims that do not state causes of action *sua sponte*. *See Bintliff–Ritchie v. American Reinsurance Company*, 285 Fed. App'x 940, 943 (3d Cir. 2008) ("The District Court has the power to dismiss claims *sua sponte* under Rule 12(b)(6)"); *Bryson v. Brand Insulations, Inc.*, 621 F.2d 556, 559 (3d Cir. 1980).

## III. DISCUSSION

### A. Plaintiffs' Civil Rights Claims

We begin by noting the elements that Plaintiffs must plead to state a claim under § 1983 and the NJCRA. Because "[t]his district has repeatedly interpreted [the] NJCRA analogously to § 1983," *Pettit v. New Jersey*, 2011 WL 1325614, at *3 (D.N.J. Mar. 30, 2011), we treat the § 1983 and NJCRA claims together.

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). Balicki has been sued in his personal capacity. "Personal-capacity suits seek to impose personal liability upon a government official for actions he takes under color of state law." *Kentucky v. Graham*, 473 U.S. 159, 165–66 (1985). We first analyze whether the complaint states that Balicki was acting under color of state law, and then proceed to the constitutional questions.

Balicki first argues Plaintiffs cannot show that he acted under color of state law because he retired before Moore died. To act under color of state law is to exercise power "possessed by virtue

3

of state law and made possible only because the wrongdoer is clothed with the authority of state law." *United States v. Classic*, 313 U.S. 299, 326 (1941). Balicki was plainly acting under color of state law when he was performing his duties as warden of the Cumberland County Jail. He was not, however, the warden on the date Moore died. Any constitutional injuries that may be attributable to Balicki must therefore stem from actions he took while he was warden, unless Plaintiffs can show that he was acting under color of state law *after* his retirement, a posture the complaint does not support. As a matter of law, then, Plaintiffs may be able to show that Balicki's acts or omissions led to a constitutional violation, as a policy attributable to his decisions may have continued after his tenure as warden. But Plaintiffs must still plead sufficient facts for that claim.

We turn to the constitutional violations. Plaintiffs allege that Balicki may be personally liable for violating Moore's constitutional or federal rights under various theories of supervisory liability. Because vicarious liability and *respondeat superior* are not actionable under § 1983, *City of Canton, Ohio v. Harris*, 489 U.S. 378, 385 (1989), Plaintiffs must show that Balicki, as a supervisor, violated Moore's constitutional rights. *See Iqbal*, 556 U.S. at 677 ("Absent vicarious liability, each Government official, his or her title notwithstanding, is only liable for his or her own misconduct."). We note that a supervisor may only be liable if the failure to supervise led to her subordinates violating a plaintiff's constitutional rights. *See Argueta v. U.S. Immigration & Customs Enf't*, 643 F.3d 60, 72 (3d Cir. 2011); *A.M. ex rel. J.M.K. v. Luzerne Cnty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004). Accordingly, we begin by evaluating whether Plaintiffs have stated a claim for the subordinates' violations.

### 1. The Underlying Constitutional Tort

We begin by focusing on the underlying constitutional tort. Plaintiffs have brought claims under both the Due Process Clause of the Fourteenth Amendment and the Eighth Amendment. The

Third Circuit has held that both claims are "essentially equivalent" and for purposes of this decision we will treat them equivalently. *Palakovic v. Wetzel*, 854 F.3d 209, 223 (3d Cir. 2017). Although it is not entirely clear from the complaint, we will also treat Moore as having been a pre-trial detainee whose claims arise under the Fourteenth Amendment, which provides "at least as much protection for personal security as the level guaranteed to prisoners by the Eighth Amendment." *Id.* at 222.

The Third Circuit has recently held, after a thorough survey of the caselaw, that a plaintiff bringing a vulnerability to suicide claim must show:

> (1) that the individual had a particular vulnerability to suicide, meaning that there was a "strong likelihood, rather than a mere possibility," that a suicide would be attempted;
> (2) that the prison official knew or should have known of the individual's particular vulnerability; and
> (3) that the official acted with reckless or deliberate indifference, meaning something beyond mere negligence, to the individual's particular vulnerability.

*Id.* at 223-24.

Under *Iqbal*, we now examine whether the complaint sufficiently pleads these elements. It does not. First, the complaint does not state that Moore had a particular vulnerability to suicide. The Third Circuit has previously explained that a "strong likelihood" of suicide "must be so obvious that a lay person would easily recognize the necessity for preventative action." *Colburn v. Upper Darby Twp.*, 946 F.2d 1017, 1025 (3d Cir. 1991) (citation and quotation marks omitted). Plaintiffs have failed to plead with reference to any facts and have only, and only approximately, recited the standard established by the Third Circuit. Second, the complaint does not plead, save for in the most conclusory of terms, that the officers knew or should have known of Moore's vulnerability. Finally, Plaintiffs have provided only conclusory language that the officers acted with reckless indifference. In brief, the complaint only provides "naked assertions" that

5

unidentified officers displayed reckless or deliberate indifference to what they should have known was Moore's particularly vulnerability to suicide.

The Court now examines whether the vulnerability to suicide claim, the constitutional tort underlying Balicki's supervisory liability, has facial plausibility. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. The only factual content provided to the Court by the complaint that is relevant to this claim is that Moore committed suicide in prison. Were this sufficient to state a claim for vulnerability to suicide, every prison suicide would have the makings of a § 1983 claim. But the Third Circuit has repeatedly held that "custodial officials cannot be placed in the position of guaranteeing that inmates will not commit suicide," and accordingly an official's culpability in these cases must be "something beyond mere negligence." *Palakovic*, 854 F.3d at 222. Put differently, not every suicide in prison will give rise to a constitutional injury. Thus, stating a claim in a vulnerability to suicide case requires some showing of facts that could give rise to an inference of a constitutional violation beyond the assertion that someone committed suicide while in custody. In *Palakovic*, the complaint sufficiently alleged a vulnerability to suicide claim by showing, *inter alia*, that the plaintiff-decedent had a long history of mental health issues, was known by the nickname "Suicide" in prison, and had been determined to be a "suicide behavior risk" by prison officials. *Id.* at 215-16. By contrast, the Third Circuit affirmed summary judgment in favor of prison officials in a vulnerability to suicide case where the plaintiff-decedent had hanged himself hours after being placed in custody but had only indicated to prison officials a general sense of remorse, feelings of failure as a father, and a recent drug and alcohol binge. *See Woloszyn v. County of Lawrence*, 396 F.3d 314, 321-23 (3d Cir. 2005). Comparison to these cases indicates that by any standard, this

complaint fails to state the vulnerability to suicide claim that underlies Balicki's alleged supervisory liability.

   2. *Supervisory Liability*

We will now directly address the claim for supervisory liability. In general, there are two ways in which a supervisor may be liable for unconstitutional acts undertaken by subordinates. *See Barkes v. First Corr. Med., Inc.*, 766 F.3d 307, 316 (3d Cir. 2014), *cert. granted, judgment rev'd on other grounds sub nom. Taylor v. Barkes*, 135 S. Ct. 2042 (2015). Liability may attach to Balicki if it can be shown that he, "with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm." *A.M. ex rel. J.M.K. v. Luzerne Cty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004) (quoting *Stoneking v. Bradford Area Sch. Dist.*, 882 F.2d 720, 725 (3d Cir. 1989)). Under the second approach, Balicki may be personally liable if he participated in violating Moore's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in the subordinates' unconstitutional conduct. *Barkes*, 766 F.3d at 316. But however they are labeled, "'failure to' claims—failure to train, failure to discipline, or, as is the case here, failure to supervise—are generally considered a subcategory of policy or practice liability." *Id.*

The Third Circuit has articulated a four-part test for determining whether an official may be held liable on a claim for a failure to supervise. "The plaintiff must identify a supervisory policy or practice that the supervisor failed to employ, and then prove that: (1) the policy or procedures in effect at the time of the alleged injury created an unreasonable risk of a constitutional violation; (2) the defendant-official was aware that the policy created an unreasonable risk; (3) the defendant was indifferent to that risk; and (4) the constitutional injury was caused by the failure to implement the supervisory practice or procedure." *Barkes*, 766 F.3d at 317. The Third Circuit has likewise

stated that "the level of intent necessary to establish supervisory liability will vary with the underlying constitutional tort alleged." *Id.* As noted, for a vulnerability to suicide claim, the level of intent necessary is "reckless or deliberate indifference" to the risk of suicide. *Palakovic*, 854 F.3d at 231.

Although Plaintiffs appear to advance several theories of supervisory liability, none is sufficiently pleaded. Indeed, *Iqbal* squarely addressed the same issue we face today: a *Bivens* complaint brought alleging supervisory liability for a variety of constitutional torts. The Supreme Court held that plaintiff's numerous allegations, including that defendants "knew of, condoned, and willfully and maliciously agreed to subject [him] to harsh conditions of confinement" "as a matter of policy, solely on account of [his] religion, race, and/or national origin and for no legitimate penological interest," were conclusory. *Id.* at 681-682. The complaint failed to contain facts, did not plausibly allege a basis for liability, and thus did not comply with Rule 8 of the Federal Rules of Civil Procedure. *Id.* at 683. Dismissal was therefore proper.

The defects in the complaint before the Court today are similar in nature to those the Supreme Court addressed in *Iqbal*. Within the four corners of the complaint, the Court can only evaluate two facts as relevant to the supervisory claims brought against Balicki: first, that he was warden of the Cumberland County Jail before the end of his tenure on February 1, 2017, and second, that Ms. Moore died while in custody nearly three weeks later, on February 20, 2017. The rest of the complaint is merely a "formulaic recitation of the elements." *Twombly*, 550 U.S. at 555. And this is true for each element of supervisory liability. We have already identified that Plaintiffs have failed to state a claim for an underlying constitutional tort. So too have they failed to plead that Balicki was aware his failure to supervise created an unreasonable risk, that he was indifferent to that risk, or that his indifference caused a failure to supervise such that, three weeks after his

retirement, his indifference proximately caused a suicide. As the Third Circuit has held in similar circumstances, Plaintiffs must show a defendant's "personal involvement in the alleged wrongs," and "[a]llegations of participation or actual knowledge and acquiescence . . . must be made with appropriate particularity." *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988). This is a demanding standard: a mere assertion that a defendant had "responsibility for supervising" is "irrelevant." *Id.*

The standard is not met here. There is no reference to a policy. There is no factual reference to Balicki promulgating a policy or directing subordinates to engage in a policy of deliberately ignoring suicidal prisoners. There is no reference to what he did as warden, nor to what Plaintiffs think he did as warden, nor even to what happened in the three weeks between Balicki's departure and Moore's suicide. Plaintiffs have therefore failed to state a claim for their § 1983 and NJCRA claims against Balicki.

### B. Plaintiffs' Tort Claims

Plaintiffs' claims for wrongful death and negligence are just as insufficient. In New Jersey, a wrongful death action may be pursued under N.J. Stat. Ann. 2A:31–1:

> When the death of a person is caused by a wrongful act, neglect or default, such as would, if death had not ensued, have entitled the person injured to maintain an action for damages resulting from the injury, the person who would have been liable in damages for the injury if death had not ensued shall be liable.

*Miller v. Estate of Sperling*, 166 N.J. 370, 381, 766 A.2d 738, 744 (2001).

Plaintiffs' wrongful death claims against Balicki suffer from the same defects as the constitutional claims and are wholly conclusory, without any factual basis. The complaint merely states that Moore committed suicide and that Balicki was warden three weeks before this happened. There is no attempt to connect these, only a conclusory claim of a failure to supervise, which we have already found insufficient for purposes of Plaintiffs' civil rights' claims. So too

9

here. All the elements of a negligence claim—duty, breach, causation, and damages—are not pleaded for in the complaint. *See Townsend v. Pierre*, 221 N.J. 36, 51 (2015). Thus, the tort claims against Balicki are also dismissed for failure to state a claim.

### C. Qualified Immunity

Balicki has asserted qualified immunity, but the Court cannot resolve that issue at this time. A court considering a government official's defense of qualified immunity must first decide whether the facts that a plaintiff has alleged make out a violation of a constitutional right. *Pearson v. Callahan*, 555 U.S. 223, 232 (2009). As Plaintiffs have failed to provide sufficient facts to make out a violation of any constitutional right, a ruling on qualified immunity is premature at this stage in the litigation.

### IV. CONCLUSION

Plaintiffs have failed to state a claim against Balicki. The complaint is dismissed without prejudice, with leave to amend. *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002). An order follows.


Dated: March 7, 2018  /s Robert B. Kugler
ROBERT B. KUGLER
United States District Judge